IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION


WILLIAM H. ROGERS, JR., et al.,    )    Case No. 4:06CV00015
    )
    Plaintiffs,    )
    )    **MEMORANDUM OPINION**
v.    )
    )
DOW AGROSCIENCES, LLC, et al.,    )    By: Jackson L. Kiser
    )    Senior United States District Judge
    Defendants.    )
    )
    )
    )


Before me now are Defendants' Dow Agrosciences, LLC ("Dow"), UAP Timberland,

LLC ("Timberland"), Chemorse, LTD ("Chemorse"), and Provine Helicopter Service, Inc.

("Provine") Motions to Dismiss.   Plaintiffs in this action are  William H. Rogers, Jr., Frank M.

Ferrell, Robert L. Hedrick, Willie E. Redd, Jay Calhoun, Walter Coles, Jr., Alice C. Coles, and

Sarah McBreyer's (collectively "Plaintiffs").  The parties have briefed the issues and oral

argument was held before this Court on September 21, 2006.  The motions are therefore ripe for

decision.  For the reasons stated herein, Defendants' Motions to Dismiss are partially **DENIED,**

partially **GRANTED**, and partially **GRANTED WITH LEAVE TO AMEND FOR TWENTY (20) DAYS.**


**I.**    **FACTUAL AND PROCEDURAL HISTORY**

Plaintiffs in this case have alleged various causes of action against Defendants for their

respective alleged roles in spraying chemical herbicides on Plaintiffs' crop of pine trees in 2004.

The herbicides contain a mix of products manufactured and distributed by Defendants Dow

1

Agro, BASF, Chemorse, and Timberland.  Defendant Provine Helicopter allegedly sprayed this mix of chemicals onto Plaintiffs' trees.

On September 2, 2005, Plaintiffs filed their Motion for Judgment in Pittsylvania County Circuit Court on a breach of contract claim against the Defendants above.  On March 27, 2006, BASF, Dow Agro, and UAP filed a Joint Petition for Removal to this Court based upon diversity jurisdiction under 28 U.S.C. § 1332.  Chemorse and Provine Helicopter filed separate petitions for removal by April 25, 2006.  The Plaintiffs filed Motions to Remand to state court and to Amend the Motion for Judgment and Join Parties on April 27, 2006.  While that Motion was under consideration, Plaintiffs initiated a separate lawsuit in the Circuit Court on May 24, 2006 against the Commonwealth of Virginia, the Virginia Department of Forestry and the Virginia Comptroller ("Virginia Defendants").  The Virginia Defendants filed a third party complaint on June 19, 2006, naming BASF, Dow, Timberland, Chemorse and Provine as third party defendants.

Defendant Timberland filed the first Motion to Dismiss under Federal rule of Civil Procedure 12(b)(6) in this case on March 31, 2006.  Defendant Dow AgroSciences followed on April 4, 2006; Defendants Provine Helicopter Services and Chemorse filed theirs on April 20, 2006.  Plaintiffs responded with a Brief in Opposition to all Defendants except for Dow on August 4, 2006, and filed a response to Dow on August 18, 2006.  Defendants Timberland, Provine and Chemorse replied to the Plaintiffs Response in Opposition on August 11, 2006; Defendant Dow replied on August 25, 2006.  A hearing for this motion was held on September 21, 2006.  Defendant Provine provided a Supplemental Memorandum in Support of its Motion to dismiss on September 26, 2006.

## II.    LEGAL STANDARD

### A.    *Motion to Dismiss:*

Under the Federal Rules of Civil Procedure, a well-pleaded complaint must contain (1) "a short and plain statement" of jurisdiction; (2) "a short and plain statement" of the claim; and (3) a demand for judgment. Fed. R. Civ. Pro. 8(a). In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. Rei Systems, Incorporated*, 417 F.3d 418, 420 (2005). The test at this stage "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (U.S. 1974). "The Complaint must be liberally construed in favor of the plaintiff, even if it appears that recovery is remote and unlikely." *Bryant v. Clevelands, Inc*., 193 F.R.D. 486, 489 (E.D. Va. 2000). "While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff is required to allege facts that support a claim for relief." *Bass v. E. I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Federal Election Commission v. Christian Action Network*, 894 F.Supp. 946, 950 (W.D. Va. 1995).

## III.    DISCUSSION

As there are five defendants in this case, four of which filed Motions to Dismiss some or all of the various counts against them pursuant to Federal Rule of Civil Procedure 12(b)(6), each with different arguments in support, and some joining in the arguments of others, I will address

each count as they are listed in the complaint and consider the various arguments proposed.  I will begin with a brief summary of the rulings, and state my reasons thereafter:

1. Motion to Dismiss Negligence against Defendants Dow, Timberland, Chemorse, and Provine: **DENIED**.  Related to this is the Motion to Dismiss *Res Ipsa Loquitur*, which can neither be denied nor granted as *Res Ipsa Loquitur* is an evidentiary doctrine, and not a cause of action.

2. Motion to Dismiss Breach of Implied Warranties of Fitness For a Particular Purpose and Merchantability against Defendants Dow, Chemorse, Timberland: **DENIED**.  The Motion is **GRANTED WITH REGARDS TO DEFENDANT PROVINE, ALTHOUGH WITH LEAVE FOR THE PLAINTIFF TO AMEND WITHIN TWENTY (20) DAYS**.

3. Motion to Dismiss Breach of Express Warranty is **DENIED** to all Defendants.

4. Motion to Dismiss Violation of the Magnuson Moss Warranty Act ("MMWA") is **DENIED** to all Defendants except Provine, to which it is **GRANTED WITH LEAVE FOR THE PLAINTIFF TO AMEND WITHIN  TWENTY (20) DAYS**.

5. Motion to Dismiss Trespass against Defendant Provine: **GRANTED**.

6. Motion to Dismiss Punitive Damages: **GRANTED WITH LEAVE FOR THE PLAINTIFF TO AMEND WITHIN  TWENTY (20) DAYS** to all Defendants.

       A.    *Motion to Dismiss Negligence*

      Defendants Chemorse and Provine argued that the negligence claims against them should be dismissed because the Economic Loss Doctrine ("ELD") bars recovery where the only injury is to Plaintiffs' economic expectations, and the Defendants claim that the Plaintiffs have only alleged such damages.  Defendant Dow also argued that the cause of action should be dismissed for failure to plead a fact in support of the claim.  Reading the Plaintiffs' Complaint liberally, I

find that they are entitled to find evidence that they suffered damages not barred by Virginia's reading of the ELD and that they have plead enough facts to put the Defendants on notice.

## 1. The Economic Loss Doctrine

The ELD defines the boundary between tort and contract law. John L. Costello, *Virginia Remedies* § 21.05 at 1-21 (Matthew Bender & Co., 2005) (*citing Sensenbrenner v. Rust, Orling & Neale*, 236 Va. 419, 424, 374 S.E.2d 55, 57 (Va. 1988)). The simple common-law statement of the rule is "a party not in privity may not recover damages where there is no physical injury to person or property." *Blake Constr. Co. v. Alley*, 233 Va. 31, 33, 353 S.E.2d 724, 725 (Va. 1987). The rationale behind the rule is that because contract damages are limited to those "within the contemplation and control of the parties in framing their agreement" and tort awards can be more generous, some mechanism is needed to keep lawyers from tailoring tort suits out of contract breaches. *Richmond v. Madison Management Group, Inc*., 918 F.2d 438, 446 (4th Cir. 1990) (*quoting Kamlar Corp. v. Haley*, 224 Va. 699, 706, 299 S.E.2d 514, 517 (Va. 1983)). The bright line between tort and contract dims where one has a contractual duty but the performance of that duty creates a risk to the well-being of other's persons or property. *Gonella v. Lumbermens Mut. Cas. Co.*, 64 Va. Cir. 229, 235 (Va. Cir. Ct. 2004) (contractor had a contractual duty to fix a leak, but a tort duty could exist where faulty performance led to mold and disease). In such cases, a tort-type duty may exist. *Id. See also Commonwealth Park Suites Hotel v. Armada/Hoffler Constr. Co.*, 34 Va. Cir. 393, 399 (Va. Cir. Ct. 1994) ("[W]here the safety of persons or property is involved, or where physical harm is threatened, the Supreme Court [of Virginia] must have intended that where such allegations are made, a cause of action does exist.").

5

The ELD is most applicable to situations where a party is negligent, but the only damages are economic in nature, and no contract connects the plaintiff and defendant. *Gerald M. Moore & Son, Inc. v. Drewry*, 251 Va. 277, 279-80, 467 S.E.2d 811, 813 (Va. 1996); *Ward v. Ernst & Young*, 246 Va. 317, 325, 435 S.E.2d 628, 632 (Va. 1993); *Sensenbrenner v. Rust, Orling & Neale*, 236 Va. 419, 423, 374 S.E.2d 55, 58 (Va. 1988). Conversely, "when privity exists, economic losses may be recovered under a negligence theory." *Ward,* 246 Va. at 325-26 n.3, 374 S.E.2d at 632 n. 3; *Jonas B. Crooke Interests, Inc. v. CTL Eng'g, Inc.,* 1999 U.S. App. LEXIS 5742, *6 (4th Cir. 1999) (*citing Moore*, 467 S.E.2d at 813). Virginia is among the few states that still require privity of contract for a plaintiff to recover for economic losses due to the defendant's negligence. *See Floor Craft Floor Covering, Inc. v. Parma Community General Hosp. Ass'n*, 54 Ohio St. 3d 1, 11-12, 560 N.E.2d 206, 214-215 (Ohio 1990) (Brown, J., dissenting) (listing 21 states which have abandoned the privity requirement, and noting that Virginia is an exception). The privity requirement has been criticized for being "both bad tort law and bad social policy." *Floorcraft,* 54 Ohio St. 3d at 10, 560 N.E.2d at 213. Nonetheless, it is the rule in Virginia that privity of contract is a "requirement for recovery of purely economic loss damages in negligence actions." *Moore*, 467 S.E.2d at 813. Furthermore, Virginia's privity requirement can be met by those who are third party beneficiaries to the contract. *Ward*, 246 Va. at 330, 435 S.E.2d at 634 (*citing Professional Realty v. Bender*, 216 Va. 737, 739, 222 S.E.2d 810, 812 (Va. 1976)).

In the case before me, the Defendants argue that Plaintiffs' loss of their trees is a purely economic loss, and as a result, the Plaintiffs' negligence claim must fail. Defendants cite several cases from other jurisdictions which found that damage to crops were economic losses not

6

recoverable in tort.  In *Bailey Farms v. NOR-AM Chemical Co.*, Michigan's economic loss rule barred  a watermelon farmer from suing the maker of a soil fumigant in negligence for the loss of crops. 27 F.3d 188, 191 (6th Cir. 1994) (citing *Neibarger v. Universal Coops.*, 486 N.W.2d 612, 615 (Mich. 1992)).  In *Gooch v. E.I. DuPont de Nemours & Co.*, Kentucky's ELD barred a corn farmer's tort suit against the maker of an herbicide for damages to his crop, and the Court ruled that any remedy lay in contract instead.  40 F. Supp. 2d 863, 874-76 (W.D. Ky. 1999).  In *Lake & Piepkow Farms v. Purina Mills*, a court held that damages to cattle resulting from defective feed was an economic loss and could not go forward under a negligence theory. 955 F. Supp. 791, 794 (W.D. Mich. 1997).

The Plaintiffs respond that the ELD does not apply for three reasons.  First, while lost profits due to negligence might be barred by the ELD, the Plaintiffs have also alleged substantial physical damages to their property as well.  Plaintiffs are correct that the ELD does not apply for physical damages to persons or property.  *Blake Constr. Co. v. Alley*, 233 Va. 31, 33, 353 S.E.2d 724, 725  (Va. 1987) ("a party not in privity may not recover damages where there is *no physical injury to person or property*.") (emphasis added).  At this point in the proceedings, I must assume that the Plaintiffs property was physically damaged. *Venkatraman*, 417 F.3d at 420.[1]

Second, Plaintiffs argue that the Defendants had a duty of care outside of the contractual duties and can be held directly liable for the negligent breach of that duty of care which injured

---

[1]Under Virginia law, it is possible that an injury to trees would be treated differently than injuries to other crops such as the watermelon, corn and cattle in the cases cited by Defendants. At least one Virginia case seems to equate an injury to trees with an injury to real estate. *Wood v. Weaver*, 121 Va. 250, 258, 92 S.E. 1001, 1003  (Va. 1917) ("Every trespass consisting in the cutting of standing trees is in its nature an injury to real estate...").  Regardless of whether the cases are distinguishable on this point, my decision rests on the Plaintiffs' allegation that their property was damaged.

7

Plaintiff's property. *Gonella*, 64 Va. Cir. at 235. In *Gonella*, the plaintiffs alleged a personal injury stemming from a contractor's negligent repair of a leak that caused a mold infestation. *Id.* at 230. Defendants filed a demurrer because recovery was barred by the economic loss rule and the only duty was a contractual one. *Id.* at 229. After examining the Virginia Supreme Court precedent, the court found that while these cases barred negligence recovery where the only duty was in contract, this principle did not extend "to preclude a personal injury claim by someone claiming serious injury arising from a contracting party's creation of an unreasonably dangerous condition" Id. At 235. Just as the *Gonella* court decline to extend the ELD to cases where an independent duty to prevent personal injury may exist, I decline to extend the ELD where an independent duty to prevent injury to property may exist.

Finally, the Plaintiffs argued that Virginia allows recovery for economic losses in negligence provided that privity of contract exists. *Moore*, 467 S.E.2d at 813; *Ward,* 246 Va. at 325-26, 374 S.E.2d at 632; *Jonas B. Crooke.,* 1999 U.S. App. LEXIS 5742. Plaintiffs assert their status as third party beneficiaries to the contract between the Defendants and the Commonwealth of Virginia to meet the privity requirement. *Ward*, 246 Va. at 330, 435 S.E.2d at 634. It is Virginia's privity requirement which most compellingly rebuts the cases cited by the Defendants above. Both *Lake & Piepkow Farms* and *Bailey Farms* applied the Michigan version of the ELD which has no privity requirement. *See Bacco Constr. Co. v. American Colloid Co.*, 148 Mich. App. 397, 416 (Mich. Ct. App. 1986) (comparing cases which required privity as opposed to foreseeability and adopting the latter). *Gooch* was decided under Kentucky law. While Kentucky courts have not made a definitive ruling on the issue of privity, at least one federal court believed that the Kentucky Supreme Court would join the majority of states in

8

omitting the privity requirement from the ELD. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 852 (6th Cir. 2002).

### 2. Sufficiency of Claim

Turning away from the ELD, Defendant Dow argued that the Plaintiffs' Complaint did not have sufficient factual allegations to support the legal conclusions of the elements of negligence. *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002). In *Iodice*, the plaintiffs sued a Veterans Administration hospital after they were injured by a patient who caused an automobile crash under the influence of drugs provided by the Defendant Hospital. *Id.* at 273. The Court held that the plaintiffs failed to allege facts showing that the hospital staff knew or should have known that the patient would be driving soon thereafter, as would be required under North Carolina law in cases involving health care providers and third-party plaintiffs. *Id.* at 279. This case is inapposite to the facts here in which the Plaintiffs have alleged that the Defendants made, sold, and sprayed chemicals on the Plaintiffs' trees, and those trees were damaged as a result. Figuring out the precise mechanisms which caused the tree damage will require discovery. Plaintiffs have alleged sufficient facts to show negligence here, especially considering that "a general allegation of negligence is ordinarily sufficient." *Lipscomb v. O'Brien*, 181 Va. 471, 475, 25 S.E.2d 261, 263 (Va. 1943).

### 3. Res Ipsa Loquitur

There was some confusion among the briefs about dismissing the claim of *res ipsa loquitur*. Defendants Timberland, Provine, and Chemorse all moved to dismiss the Plaintiffs' claim of *res ipsa loquitur* because Plaintiffs failed to allege facts that support all of the elements under Virginia law. *Lewis v. Carpenter Co.*, 252 Va. 296, 300, 477 S.E.2d 492, 494 (Va. 1996)

("the instrumentality causing the damage [was] in the exclusive possession of or under the exclusive management of the defendant, the accident [was] of such nature and character as does not ordinarily occur if due care is used, and the evidence regarding the cause of the incident is accessible to the defendant and inaccessible to the injured party"). Defendant Dow noted that *res ipsa loquitur* is an evidentiary doctrine, not a cause of action, but then also attacked the Plaintiffs' use of the doctrine on similar grounds.

"*Res ipsa loquitur* is not a separate cause of action, but an evidentiary presumption in a negligence case that shifts the burden of production of evidence to the tortfeasor." *Quillen v. Steri-Systems Corp.*, 2005 U.S. Dist. LEXIS 2320, *2-*3 (W.D. Va. 2005) (*citing Easterling v. Walton*, 208 Va. 214, 156 S.E.2d 787, 790 (Va. 1967); *Wilshin v. City of Fredericksburg*, 26 Va. Cir. 329, 1992 WL 884516 (Va. Cir. Ct. 1992)). A Rule 12(b)(6) motion does not apply to the use of an evidentiary doctrine. It may well be that Plaintiff will be unable to use the doctrine of *res ipsa loquitur* at trial, but this is not a matter that can be decided on the pleadings. As such, there is no use denying or granting this motion.

     B.     *Motions to Dismiss Warranty-Based Claims*.

          1.     *Application of the UCC*

Defendants Provine and Dow have argued that the claims for implied warranty of merchantability and the implied warranty of fitness for a particular purpose should be dismissed because these warranties are provided for in the Uniform Commercial Code ("UCC"), and the UCC does not apply in this case.

Both the implied warranty of merchantability and the implied warranty of fitness for a particular purpose arise under the UCC as adopted by the Commonwealth of Virginia. Va. Code

Ann. §§ 8.2-314, -315.  Article 2 of the UCC applies only to sales of goods. Va. Code Ann. § § 8.2-102.  Where a transaction involves both goods and services, the UCC applies only if the goods portion of the transaction predominates.  *Fournier Furniture v. Waltz-Holst Blow Pipe Co.*, 980 F. Supp. 187, 189 (W.D. Va. 1997).

Defendants Provine and Dow argue that the outcome of  "predominant factor" test in cases like this one–involving a contract for the aerial spraying of chemicals on agricultural land–is predetermined by the weight of authority from other jurisdictions which conclude that the services aspect of the contract predominates and therefore the UCC does not apply. Defendant Dow provided the following string citation to support its conclusion:

> 2 Lary Lawrence, *Lawrence's Anderson on the Uniform Commercial Code*, § 2-105:121 (3d ed. 2006) (footnotes omitted). . . . *Abelman v. Velsicol Chemical Corp*., 15 U.C.C. Rep. Serv. 2d (Callaghan) 93, 1991 WL 213402 (Md. Cir. Ct. 1991); *Grossman v. Aerial Farm Serv*., 384 N.W. 2d 488 (Minn. Ct. App. 1986) [(where plaintiffs selected the method of spraying herbicides on his land, the dominant factor in the transaction was one for services and therefore not governed by the UCC)]; *Missouri Farmers Ass'n v. McBee*, 787 S.W.2d 756 (Mo. Ct. App. 1990) [(where choice of chemicals and method of spraying left to defendant, the dominant factor in the transaction is one for services, not goods)]. *Insul-Mark Midwest, Inc. v. Modern Materials, Inc.,* 612 N.E.2d 550, 556 (Ind. 1993); see also *Sears Termite & Pest Control, Inc*., 883 So. 2d 153, 157 (Ala. 2003) ("We note that other jurisdictions have declined to apply the provisions of the UCC to contracts involving the application of pesticides.") (citations omitted); *Smith v. Orkin Exterminating Co., Inc*., 791 F. Supp. 1137, 1142 (S.D. Miss. 1990) (in a case involving alleged negligent fumigation of a house, holding that the fumigation contract was a "service contract" and that "the plaintiff's contentions are based upon implied warranties and UCC provisions wholly inapplicable to the instant case."); *Knorn v. Orkin Exterminating Co., Inc*., Case No. C-2-98-919, 2000 U.S. Dist. LEXIS 20259, at *7 (S.D. Ohio Feb. 8, 2000) ("[T]he purpose of the contract was to treat Plaintiff's property for termites, the sale of goods, if any, such as chemicals used for the treatment, was incidental to the transaction. . . . Thus, Plaintiff's claim for breach of implied warranties fails to state a claim upon which relief can be granted.")

This argument is especially relevant to Defendant Provine.  Alone among the defendants,

Provine is not in the business of manufacturing or selling chemicals. Plaintiffs allege that Defendant Provine "is engaged in the business of the aerial spraying of herbicides, surfactants, and other chemicals." As I must assume that the Plaintiffs' allegation is true at this stage of the proceedings, neither the implied warranty of fitness for a particular purpose nor the implied warranty of merchantability can apply to Defendant Provine, who only provided services and not goods. As for Defendant Dow, the argument is less compelling. Defendant Dow is essentially using privity as a defense, arguing that because the services dominant contract between Plaintiffs and the Virginia Department of Forestry (and the Department of Forestry and Defendant Provine) to spray chemicals is not under the UCC, the UCC-based implied warranties do not apply to the end supplier and user. I will deal with the privity defense in greater detail in part III.B.2 below.

Defendant Provine further argued that even if the UCC applied to this transaction, the claim for implied warranty of merchantability still fails because Defendant Provine is not a merchant with respect to the goods at issue here. Va. Code Ann. § 8.2-314. ("Unless excluded or modified, . . . a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.") The UCC defines a "merchant" as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill." Va. Code Ann. § 8.2-104(1). Plaintiffs have not alleged that Defendant Provine is a dealer in chemicals, or that Defendant Provine had knowledge or skill with regard to

12

those goods. On these grounds, in addition to the ones cited above, Plaintiffs' claim for implied warranty of merchantability fails with respect to Provine.

In addition, Defendant Provine argues that the implied warranty of fitness for a particular purpose must also be dismissed upon separate grounds. This implied warranty exists "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." Va. Code Ann. § 8.2-315. Plaintiffs never alleged that Provine had reason to know any particular purpose for which the goods were required, nor did they allege that they relied on Provine's skill and judgment in deciding which chemicals to purchase. Furthermore, the contracts between Plaintiffs and the Commonwealth show that it was the Virginia Department of Forestry which selected the chemicals, not Provine.

Plaintiffs contend that at this stage, there are not enough facts in evidence to determine if Defendant Provine acted as a merchant or seller of the goods in this transaction, or whether Plaintiffs relied on Defendant Provine's skill or judgment. Given the pleadings as they stand now, however, there is no claim for either implied warranty as to Defendant Provine for which relief can be granted. I grant this motion for Defendant Provine with twenty days leave for the Plaintiff to amend the complaint with sufficient factual allegations to sustain these claims.

### 2. *Privity as Defense*

Defendants Dow and Chemorse argue that privity of contract is required between the plaintiffs and the defendants in order for a claim to exist under the implied warranties.[2]

---

[2]Defendant Chemorse also argues that privity is required for an express warranty claim as well.

According to the pleadings, both Defendants Dow and Chemorse are remote manufacturers of some of the chemicals involved in the aerial spraying and the Plaintiffs have never had any direct transaction with either of them. The question remains whether contractual relationship between the manufacturer and the end user are required for a claim based in implied warranties. Even if the implied warranties apply, the Defendants argue that Virginia law precludes the Plaintiff's recovery of consequential damages. I find that Plaintiffs stand in privity with the Defendants as third-party beneficiaries to the contract with the Virginia Department of Forestry. *Ward*, 246 Va. at 330, 435 S.E.2d at 634.

Defendant Chemorse argues that privity is an element of the claims for implied warranty for fitness of a particular purpose and for express warranty. Va. Code Ann. section 8.2-315 specifically refers to a "time of contracting" for the implied warranty of fitness for a particular purpose while Va. Code Ann. section 8.2-313 (express warranties) refers to "affirmations" made by the seller to the buyer at the time of the sale.[3] Defendants Dow and Chemorse, arguing against consequential damages, also cite to Va. Code § 8.2-715(2), which says "[c]onsequential damages resulting from the seller's breach include. . . any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." This law has been interpreted to require privity of contract between the buyer and seller in order to recover consequential damages in implied warranty of merchantability claims. *Beard Plumbing & Heating v. Thompson Plastics*, 254 Va. 240, 246, 491 S.E.2d 731, 734 (Va. 1997) ("§

---

[3] No such language attaches to the implied warranty of merchantability. Va. Code Ann. § 8.2-314.

8.2-715(2)(a) requires a contract between the parties for recovery of consequential economic loss damages in a claim for breach of the implied warranty of merchantability"). As discussed above, third party beneficiaries are considered to have privity of contract with other parties under Virginia law. *Ward*, 246 Va. at 330, 435 S.E.2d at 634. The Plaintiffs have alleged that they were third-party beneficiaries to the contract, and therefore they are entitled to the protection of the implied warranties and to seek consequential damages.[4]

### 3. *Implied Warranty of Fitness for a Particular Purpose*

Defendant Dow argued in the alternative that even if the UCC applied to the transactions here, the implied warranty of fitness for a particular purpose would not apply because the products in question were used for their ordinary purpose and not any particular purpose. Va. Code Ann. § 8.2-315 provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the

---

[4] I have some doubt as to whether privity of contract is required for a foreseeable user of a product to enforce an implied warranty provided by a remote manufacturer or seller in the chain of commerce. Virginia abolished a defense of privity in warranty cases. Va. Code Ann. § 8.2-318. Under the anti-privity statute, a remote user may stand in the shoes of the first buyer in the chain of commerce who received the goods from the seller along with the warranty. *Stoney v. Franklin*, 54 Va. Cir. 591, 2001 Va. Cir. LEXIS 84, *25 (Va. Cir. Ct. 2001) ("Unless disclaimed, implied warranties accompanying goods extend under Virginia's anti-privity statute to any 'person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods.' . . . Nothing in the UCC's definition of goods addresses, much less trumps, the broad reach of Virginia's anti-privity statute"); *Steingaszner v. Paramount Termite Control Co.*, 5 Va. Cir. 309, 311 (Va. Cir. Ct. 1985) (where dominant contract was for service of spraying for termites, party in privity with the services provider may still sue remote provider under warranty theory); *see also Blevins v. New Holland N. Am., Inc.*, 97 F. Supp. 2d 747, 749 (W. D. Va. 2000) ("[§ 8.2-318] allows foreseeable users of goods a remedy against the seller, without regard to privity of contract.") Under § 8.2-318, the presence of the intervening services contract is irrelevant, and the inquiry becomes one of foreseeability. It seems clear that, as manufacturers of herbicides and surfactants, Defendants Dow and Chemorse could reasonably have foreseen that commercial tree growers would be "expected to use, consume, or be affected" by the goods.

15

seller's skill or judgment to select or furnish suitable goods, there is. . . an implied warranty that the goods shall be fit for such purpose." The Federal Insecticide, Fungidicide and Rodenticide Act ("FIFRA") governs the herbicide in question here. 7 U.S.C. § 136j(a)(2)(G) ("It shall be unlawful for any person. . . to use any registered pesticide in a manner inconsistent with its labeling"). Defendant Dow argues that because the federal law restricts the use of its products, no other legal particular purpose can exist.

In *Lescs v. Dow Chemical Co.*, 976 F. Supp. 393, 400 (W.D. Va. 1997), a plaintiff's implied warranty of fitness claim for injuries sustained due to an insecticide was dismissed in summary judgment because the application of the insecticide was done in an ordinary way, and there was no particular purpose. Similarly, in *Lowe v. Sporicidin International*, 47 F.3d 124, 132 (4th Cir. 1995), the plaintiff failed to allege a particular purpose for the disinfectant in question that was different from its ordinary purpose, and the implied warranty for fitness was dismissed at summary judgment. A similar outcome at the 12(b)(6) stage is premature. The label for Dow's product is not in evidence, so I cannot assume what the "ordinary purpose" of this product is, and whether that includes aerial spraying, mixing with other chemicals or us on trees.

### 4. *Express Warranty*

Defendants Dow and Provine further argue that, even if the UCC applies, the express warranty claim must fail because the Plaintiffs have failed to allege necessary facts to make this claim. The Plaintiffs express warranty claim alleged:

> Each of the Defendants provided an express warranty warranting the safety of their respective products and services and their effective use for the type of spraying activities performed on Plaintiffs' land. Through the acts and omissions of the Defendants, said express warranties were breached. As a direct and proximate result of the Defendants' breach of these express warranties, the Plaintiffs sustained substantial damage to their respective properties and the loss

16

of considerable profits.

Pls' Mot. For J. at 6 ¶¶ 27-29.  Defendant Dow claims that these allegations "merely parrot the language of [Va.] Code § 8.2-313" and therefore fail to state a claim. *Pulte Home Corp. v. Parex, Inc.*, 265 Va. 518, 523-24, 579 S.E.2d 188, 190-91 (Va. 2003).

I find that the Plaintiffs have alleged enough facts in this case to be entitled to proceed with their express warranty claim.  In the *Pulte* case, the allegations in the complaint were far more conclusory, with the plaintiff alleging that "by way of affirmations of fact, promises, descriptions, and/or use of samples and/or models regarding the appearance, durability. . ." *Id.* This allegation closely tracks the language of Va. Code Ann. section 8.2-313 without providing specificity.[5]  In the case at the bar, while Plaintiffs may not have alleged who specifically made the express warranty, or the exact terms of the warranty, they have alleged that Defendant Dow is a manufacturer of the chemicals used, that Defendant Provine provided spraying services,  that both Defendants provided an express warranty, and the damage to the Plaintiff's land and trees

---

[5]  Va. Code Ann. § 8.2-313 reads:
(1) Express warranties by the seller are created as follows:
   (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
   (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
   (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

constitutes a breach. At this stage of the pleadings, further specificity may require discovery. It is possible that discovery will reveal that the Plaintiffs cannot prove their allegations, but at this time, they have alleged facts in support of an express warranty claim which would entitle them to relief. *Federal Election Commission*, 894 F.Supp. at 950.

   C.   The Magnuson Moss Warranty Act

The Defendants argue that the MMWA claim should be dismissed for several reasons. First, Defendants Chemorse, Provine and Timberland argue that the chemicals used in this case are not "consumer products" as defined by the MMWA, and therefore do not fall under this law. 15 USCS § 2301(1). Defendant Dow argues that Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA") governs the Dow products' warranties, thereby pre-empting application of MMWA.

   1.   Consumer Products

The MMWA applies to consumer products, defined as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes. . ." as opposed to commercial products. 15 USCS § 2301(1). Several cases have held that products which did not meet this definition were commercial products not covered by the MMWA. *See*, *e.g.*, *Illinois ex Rel. Mota v. Central Sprinkler Corp.*, 174 F. Supp. 2d 824, 831 (C.D. Ill. 2001) (MMWA does not apply to sprinklers because they were designed and sold for institutional use, not "consumer products"; *Crume v. Ford Motor Co.*, 653 P.2d 564 (Or. Ct. App. 1982) (truck purchased for cattle ranch is not "consumer product."); *Frank v. Allstate Auto Sales*, 1992 Ohio App. LEXIS 2295 (Ohio Ct. App. 1992) (tow truck purchased for business use is not a "consumer product"). The Defendants argue that their herbicides, insecticides and

18

surfactants are not "consumer products" under the MMWA because they are not "used for personal, family, or household purposes."

There is no evidence that I can consider at this stage of the proceedings that suggest that the chemicals are not "normally used for personal, family, or household purposes." None of the names of the chemicals used has been put in evidence yet, nor any information about who purchases them, who uses them, or how they are used. Construing the pleadings liberally in favor of the Plaintiffs, I must assume that these chemicals are widely available and used for household purposes. Perhaps when further discovery has been conducted, there will be conclusive proof that some or all of the products are not consumer goods, but at this stage, I cannot make that ruling.

    *2. FIFRA*

Defendant Dow finds separate grounds for the inapplicability of the MMWA, namely that it does not apply when a written warranty is otherwise governed by federal law. 15 U.S.C. §2311(d). Dow argues that its product is governed by FIFRA, which gives the EPA the power to regulate every aspect of a pesticide's label, including placement and content of warranty languag. 7 U.S.C. §§ 136-136y; 40 C.F.R. Part 156. Defendant Dow cites an analogous case, *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 797 (Cal. Ct. App. 2002), in which an MMWA claim was dismissed because the product in question was governed by the FDCA. In *Kantor*, the court reasoned that the MMWA did not apply to the drugs at issue because the Consumer Product Safety Act expressly stated that the drugs were not "consumer products"as defined in the FDCA. *Id*. Defendant Dow argues that the Consumer Product Safety Act also expressly excludes pesticides from the definition of "consumer products" and therefore Dow's

product is also outside the MMWA. 15 U.S.C. § 2052(a)(1)(D).

Additionally, Dow builds off of the arguments of the other defendants, noting that the FTC has defined "consumer products" under the MMWA thus: "Agricultural products such as farm machinery, structures and implements used in the business or occupation of farming are not covered by the Act where their personal, family, or household use is uncommon." 16 CFR 700.1(b). Defendant Dow notes that the Plaintiffs were growing their trees for resale, and that under the FTC interpretation, agricultural products used for such purposes are not consumer products under the MMWA.

At this stage, there is insufficient evidence to for me to rule that the products used are exclusively governed by FIFRA. *Kanter* was decided at the summary judgment stage, where additional evidence was available to both parties and the Court. *Kanter,* 99 Cal. App. 4th at 789. At this stage in the proceedings, I cannot assume that the products in question are available only for commercial use, as opposed to dual use or consumer products. For this reason, I will not extend the analogy in *Kanter* to the products in this case at this time.

As Provine Helicopter is not alleged to have provided services and not products, consumer or otherwise, the MMWA does not apply to this Defendant and the Plaintiff's MMWA claim is dismissed with regards to Provine.

D.      *Trespass*

The Plaintiffs have alleged trespass against Defendant Provine for exceeding the license given to enter Plaintiffs' land because the chemicals sprayed did not merely control the weeds and undergrowth. This reading of Virginia law is incorrect, "negligent exercise of the permission granted does not vitiate the consent to enter the premises and thereby convert such

20

entry into a trespass." *Crown Cent. Petroleum Corp. v. Webb's Oil Corp.*, 1996 U.S. Dist. LEXIS 2185, *4-*5 (W.D. Va. 1996) (*citing Cooper v. Horn*, 248 Va. 417, 422, 448 S.E.2d 403, 406 (Va. 1994)). In *Crown Central*, an oil distributor was given permission to deliver kerosene to the Plaintiff. *Id.* The distributor pumped the kerosene into a well under the mistaken belief that the well was an underground storage tank. *Id.* While the distributor had been negligent, this was not held to be outside the scope of the original permission granted to the distributor. *Id.* Similarly, in this case defendant Provine had the Plaintiffs' permission to enter the land and spray chemicals. The Plaintiffs' disappointment in the result does not vitiate the original consent granted to enter the land.

E.      *Punitive Damages*

Defendants Timberland and Dow both argue that the claims for punitive damages should be dismissed for failing to allege facts which support this claim. A claim for punitive damages must be supported factual allegations which show that the defendants' conduct was willful and wanton or showed a reckless disregard for the consequences of their actions. *Woods v. Mendez*, 265 Va. 68, 76-77, 574 S.E.2d 263, 268 (Va. 2003). Furthermore, the defendants' actions must "shock the conscience" in order for the plaintiff to recover punitive damages. *Harris v. Harman*, 253 Va. 336, 486 S.E.2d 99 (Va. 1997). The presence of a few conclusory legal statements, without facts that can support those statements, will be dismissed for failing to state a claim. *Young v. City of Mt. Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).

In making their claim for punitive damages, the Plaintiffs only alleged that the "acts and omissions of the defendants constituted a conscious disregard for the rights and property of others and a reckless disregard for the consequences of their actions." This is a conclusory

statement unsupported by actual facts. While there may be a set of facts in this case that could be regarded as "wilful and wanton" or a "reckless disregard for the consequences of their actions," they have not been alleged as yet by the Plaintiffs. As we are still at the pleading stage, I am granting this dismissal, but allowing the Plaintiffs twenty days to amend their complaint with facts that might support their conclusions.

Defendant Provine makes a different argument against the punitive damages claim facing it. Defendant Provine argued that if all the other claims against it were dismissed, then the punitive damages claim would also have to be dismissed. As I have not dismissed the negligence claim against Defendant Provine, the Plaintiffs still have an opportunity to make a case for punitive damages.

## IV.   CONCLUSION

For the reasons stated above, Defendants' Motions to Dismiss are partially **DENIED**, partially **GRANTED**, and partially **GRANTED WITH LEAVE TO AMEND FOR TWENTY (20) DAYS**.

The Clerk is directed to send a certified copy of this Memorandum Opinion and the attached Order to all counsel of record.

ENTERED this 31st day of October, 2006.


s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE

22